UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SERVPRO INTELLECTUAL PROPERTY, INC., and SERVPRO INDUSTRIES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> STELLAR EMARKETING, INC., and DAN YORK, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) Civil No. 3:15-cv-01267 <br> Judge Aleta A. Trauger |
| STELLAR EMARKETING, INC., and DAN YORK, <br><br> Third-Party Plaintiffs, <br><br> v. <br><br> OLIVE MILL, INC., d/b/a SERVPRO OF GILBERT AND CHANDLER SOUTH, and ANTHONY J. OLIVERIO, Individually, <br><br> Third-Party Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

## MEMORANDUM

Third-party defendant Olive Mill, Inc. ("Olive Mill") has filed a Motion to Dismiss or In the Alternative to Compel Arbitration and Motion to Stay (Docket No. 76), and third-party defendant Anthony J. Oliverio has filed a Motion to Dismiss for Failure to State a Claim (Docket No. 74). Defendants/third-party plaintiffs Stellar Emarketing, Inc. ("Stellar") and Dan York thereafter filed a Fourth Amended Answer and Counterclaim and Third Party Complaint (Docket No. 84, as well as a Response (Docket No. 89) to the third-party defendants' motions, asking the court to dismiss them as moot. Olive Mill, presumably in anticipation of a potential

1

mootness holding, then filed a renewed Third Motion to Dismiss or In the Alternative to Compel Arbitration and Motion to Stay (Docket No. 92), and Oliverio likewise filed a Third Motion to Dismiss for Failure to State a Claim (Docket No. 90). Stellar and Dan York filed a combined Response (Docket No. 94.) Because they are now redundant and the complaint they challenged has been superseded, the two earlier-filed motions – Olive Mill's Motion to Dismiss or In the Alternative to Compel Arbitration and Motion to Stay and Oliverio's Motion to Dismiss for Failure to State a Claim – will be denied as moot. For the reasons discussed below, Olive Mill's Third Motion to Dismiss or In the Alternative to Compel Arbitration and Motion to Stay will be granted as to the request for a stay, and the claims against Olive Mill will be referred to arbitration. Oliverio's Motion to Dismiss will be granted and the claims against him, dismissed.

## BACKGROUND[1]

Servpro Intellectual Property, Inc., and Servpro Industries, Inc., (collectively, "Servpro") are Tennessee-based companies that provide cleanup and restoration services, including water damage restoration. Servpro's services are available through a nationwide network of franchisees operating under the Servpro brand. In connection with those services, Servpro is the holder of several federal trademark registrations, including registrations for the work mark SERVPRO.

Anthony J. Oliverio is the president of Olive Mill, an Arizona franchisee doing business under the name "Servpro of Gilbert and Chandler South." In 2013, Oliverio, unhappy with his company's level of prominence in search engine results, reached out to Stellar, a firm providing search engine optimization ("SEO") services for water restoration companies. In December of

---

[1] Unless otherwise indicated, the facts in this section are taken from Servpro's First Amended Complaint (Docket No. 68) and Stellar's Fourth Amended Answer and Countercomplaint and Third Party Complaint (Docket No. 84). Stellar's assertions of fact are taken as true for the purpose of the motions to dismiss.

2013, Olive Mill and Stellar entered into a contract for Stellar to perform services "intended to provide the Customer with preferential positioning in selected search engines." (Docket No 86-1 at 2.) As part of the contract, Olive Mill made the following representation:

> Client represents to Company and unconditionally guarantees that any elements of text, graphics, photos, designs, trademarks, or other artwork furnished to Company are owned by Client, or that Client has permission from the rightful owner to use each of these elements, and will hold harmless, protect, and defend Company and its subcontractors from any claim or suit arising from the use of such elements furnished by Client.

(*Id.* at 4.) Olive Mill further agreed to indemnify Stellar for any "claim that [Stellar's] use of the Client Content infringes the intellectual property rights of a third party." (*Id.* at 3.) Finally, the contract included the following clause governing disputes between Olive Mill and Stellar:

> Client and Company agree to make a good-faith effort to resolve any disagreement arising out of, or in connection with, this Agreement through negotiation. Should the parties fail to resolve any such disagreement within thirty (30) days, any controversy or claim arising out of or relating to this Agreement, including, without limitation, the interpretation or breach thereof, shall be submitted by either party to arbitration in Davidson County, TN and in accordance with the Commercial Arbitration Rules of the American Arbitration Association.

(*Id.* at 5.) In addition to the contract, Oliverio signed a credit card billing authorization form and what appears to be a brochure generally outlining Stellar's services. (Docket No. 84-6.)

Stellar used a website at the URL http://www.water-damage-phoenix-az.com to perform at least some of its services for Olive Mill. By letter dated October 6, 2014, Servpro senior corporate counsel Joel W. Brasfield informed Oliverio that the website placed Olive Mill in violation of its Servpro franchise agreement because the site (1) listed a service area including cities outside Olive Mill's franchise territory and (2) was not hosted by a Servpro-approved hosting service. (Docket No. 84-3.) Shortly thereafter, Olive Mill informed Stellar of Servpro's complaints and ceased using Stellar's services.

In late October and early November of 2015, Oliverio and Brasfield had an email exchange in which Oliverio complained about the prominence of other parties in search results for "servpro" in Arizona. Among the search engine results Oliverio identified was the website then located at the http://www.water-damage-phoenix-az.com URL, which apparently continued to appear in search results despite Olive Mill and Stellar having severed their relationship the prior year. (Docket No. 84-5 at 10.)

On November 17, 2015, Servpro sued Stellar for trademark infringement and unfair competition arising out of its alleged use of SEO tactics to attract consumers searching for the word "servpro" to its websites, including http://www.water-damage-phoenix-az.com. (Docket No. 1.) On February 11, 2016, Stellar answered the Complaint and pled third-party claims against Olive Mill and Oliverio "under a theory of indemnity and/or hold harmless." (Docket No. 18 at 9.) Oliverio and Olive Mill were served with the Third-Party Complaint on February 17 and 18, 2016. (Docket Nos. 23 & 24.) On March 14, 2016, Olive Mill and Oliverio requested an additional twenty days in which to file a responsive pleading on the ground that Oliverio was out of the country. Counsel for Stellar had been consulted about the request and did not object. (Docket No. 26 at 1–2.) The court granted the extension (Docket No. 27), and on April 10, 2016, Olive Mill and Oliverio filed separate motions to dismiss. (Docket Nos. 31 & 33.) In its motion, Olive Mill cited the dispute resolution clause in the parties' contract and asked the court to dismiss the Complaint or, in the alternative, stay proceedings and compel arbitration. (Docket No. 31 at 1–2.)

Stellar responded by filing a First Amended Answer and Counterclaim and Third Party Complaint (Docket No. 36) pursuant to Rule 15(a)(1)(B), leading to the court's denial of the then pending motions to dismiss as moot. (Docket Nos. 39 & 40.) Shortly after the court

4

denied the third-party defendants' motions as moot, Stellar filed an Unopposed Motion for Judicial Settlement Conference, noting that all parties had agreed to participate. (Docket No. 45.) The court granted the motion (Docket No. 46), but in the meantime Olive Mill and Oliverio filed renewed Motions to Dismiss (Docket Nos. 48 & 50), in which Olive Mill again sought to enforce the arbitration requirement of its contract with Stellar (Docket No. 50 at 1–2.) Stellar again amended its third-party complaint (Docket No. 53), and Olive Mill and Oliverio again filed renewed motions (Docket No. 56 & 58). Stellar amended yet again (Docket No. 60), and Olive Mill and Oliverio's motions were again denied as moot. (Docket No. 72.) The settlement conference was held but did not result in resolution of the case. (Docket No. 71.)

Olive Mill and Oliverio filed a new set of motions to dismiss, which remain pending before the Court. (Docket Nos. 74 & 76.) Stellar amended its Thirty-Party Complaint once more. (Docket No. 84.) In this most recent version of the third-party complaint, Stellar pleads five counts: (I) request for declaratory judgment that Olive Mill and Oliverio must defend and protect Stellar; (II) request for declaratory judgment that Olive Mill and Oliverio must indemnify Stellar; (III) breach of the covenant of good faith and fair dealing; (IV) breach of contract; and (V) fraudulent inducement to contract. (*Id.* at 21–25.) Olive Mill and Oliverio filed renewed motions a final time, raising substantially the same arguments they have been pursuing since April of 2016. (Docket Nos. 90 & 92.)

## ANALYSIS

### I. Oliverio's Motions to Dismiss

Oliverio argues that the court should dismiss Stellar's claim against him because Olive Mill, not Oliverio, is the party to the contract with Stellar and that he signed the contract and took all other actions relating to Stellar purely in his professional capacity as a representative of

Olive Mill.[2] Stellar responds that Oliverio's representation that he owned or was authorized to grant usage rights to the SERVPRO trademark amounted to fraud and that, as a result, Stellar should be permitted to pierce the corporate veil and hold Oliverio liable in his personal capacity.

### A. Legal Standard

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that a plaintiff provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556.

---

[2] Oliverio advances the same argument in both pending motions to dismiss. Because it has been rendered redundant, his motion of August 29, 2016, will be dismissed as moot and the court will consider his motion of September 29, 2016.

## B. Piercing the Corporate Veil

The first four of Stellar's five third-party claims arise directly out of duties under Olive Mill's December 2013 contract with Stellar for SEO services.[3] Although Oliverio's signature appears on the contract, Oliverio contends that he was signing only in his capacity as a representative of Olive Mill. "In most cases, a representative who signs a contract is not personally bound to the contract." *84 Lumber Co. v. Smith*, 356 S.W.3d 380, 382 (Tenn. 2011) (citing *Anderson v. Davis*, 234 S.W.2d 368, 369–70 (Tenn. 1950); *Dominion Bank of Middle Tenn. v. Crane*, 843 S.W.2d 14, 19 (Tenn. Ct. App. 1992)). An exception to that general rule can be found, however, where "the clear intent of the contract is to bind the representative." *Id.* (citing *Lazarov v. Klyce*, 255 S.W.2d 11, 14 (Tenn. 1953)). "Whether or not a particular contract shows a clear intent that one of the parties was contracting as an individual or in a representative capacity . . . must be determined from the contract itself." *MLG Enters., LLC v. Johnson*, No. M2014-01205-SC-R11-CV, 2016 WL 4582174, at *3 (Tenn. Sept. 2, 2016) (quoting *Lazarov*, 255 S.W.2d at 14).

The contract here is unambiguously directed only at Stellar and Olive Mill as corporate entities. On page one, the two entities are identified as the parties and dubbed "Company" (Stellar) and "Client" (Olive Mill). (Docket No. 86-1 at 1.) All of the relevant underlying rights and duties are allocated to either "Company" or "Client." (*Id.* at 1–6.) The signature block for the client requests a "Company, Name and Title," and Oliverio signed as "Anthony Oliverio[,]

---

[3] Counts I and II seek declarations of duties arising out of contractual provisions. Count III alleges breach of the covenant of good faith and fair dealing, a duty flowing from the underlying duty of performance under the contract. *See Dick Broad. Co. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 660 (Tenn. 2013). Count IV alleges breach of the contract itself. (Docket No. 84 at 21–25.)

President[,] Servpro of Gilbert + Chandler South."[4] (*Id.* at 6.) Consistently with the clear language of the contract, all of the duties arising directly out of the contract are Olive Mill's, not Oliverio's.

In order to apply Counts I through IV to Oliverio himself, then, Stellar must pierce the corporate veil, which permits a court to "attribute the actions of a corporation to its shareholders." *CAO Holdings, Inc. v. Trost*, 333 S.W.3d 73, 88 (Tenn. 2010). To pierce the corporate veil under Tennessee law, "a court must be convinced that the separate corporate entity 'is a sham or a dummy' or that disregarding the separate corporate entity is 'necessary to accomplish justice.'" *Id.* (quoting *Oceanics Sch., Inc. v. Barbour*, 112 S.W.3d 135, 140 (Tenn. Ct. App. 2003)). Nothing in Stellar's complaint suggests Olive Mill is a sham or dummy corporation. The veil can only be pierced, then, if doing so is necessary to accomplish justice for some other reason.

The Tennessee Supreme Court has identified a number of factors relevant to establishing that piercing the corporate veil is appropriate, some of which are focused on cases involving multiple related business entities, but several of which could still theoretically be examined here:

> (1) whether there was a failure to collect paid in capital; (2) whether the corporation was grossly undercapitalized; (3) the nonissuance of stock certificates; (4) the sole ownership of stock by one individual; (5) the use of the same office or business location; (6) the employment of the same employees or attorneys; (7) the use of the corporation as an instrumentality or business conduit for an individual or another corporation; (8) the diversion of corporate assets by or to a stockholder or other entity to the detriment of creditors, or the manipulation of assets and liabilities in another; (9) the use of the corporation as a subterfuge in illegal transactions; (10) the formation and use of the corporation to

---

[4] Stellar attempts to undermine the clear intent of the contract by pointing out that Oliverio's signature on the credit card authorization form does not expressly invoke his title of president. (Docket No. 84-6 at 1.) The indemnification and defense obligations at the heart of this case, however, come from the central contract governing the relationship between Stellar and Olive Mill, not the ancillary credit card authorization. To the extent that Oliverio's omission of his title has any significance to the credit card authorization, it does not affect the court's reading of the actual contract at issue in the third-party claims.

> transfer to it the existing liability of another person or entity; and (11) the failure to maintain arms length relationships among related entities.

*CAO Holdings*, 333 S.W.3d at 88 n.13 (quoting *FDIC v. Allen*, 584 F. Supp. 386, 397 (E.D. Tenn. 1984)). Stellar makes no appeal to these factors. Instead, Stellar argues that Oliverio and Olive Mill's false representation that Olive Mill could authorize the use of the Servpro trademarks is alone sufficient to justify piercing the corporate veil, because "[f]raud vitiates and avoids all human transactions." *Knox-Tenn Rental Co. v. Jenkins Ins., Inc.*, 755 S.W.2d 33, 40 (Tenn. 1988) (quoting *N.Y. Life Ins. Co. v. Nashville Trust Co.*, 292 S.W.2d 749, 754 (1956)).

Stellar's suggestion that a mere allegation of fraud unrelated to the corporate form is alone sufficient to pierce the corporate veil finds little, if any, support in contemporaneous Tennessee case law. It appears that Stellar may be confusing the question of piercing the corporate veil with the traditional equitable principle that, "[i]n cases of fraud, . . . the courts may regard the real parties responsible and grant relief against them or deny their claims and defenses based on the principles of equity." 1 Fletcher Cyc. Corp. § 41.32. That rule, though, is "older than the modern law of business corporations and does not depend on the regard or disregard of the corporation." *Id.* Because Counts I through IV are attempts to enforce Olive Mill's contractual duties, rather than claims sounding in fraud, Stellar must rely on the modern law of corporations. Because nothing in Stellar's Third-Party Complaint would be sufficient to establish that disregarding the corporate form is necessary to achieve justice in this case, the court will dismiss Counts I through IV as they pertain to Oliverio.

### C. Fraud in the Inducement

Count V does not seek to enforce duties under the contract between Stellar and Olive Mill, but rather to establish, in the alternative, that the contract itself was fraudulently induced by Olive Mill and Oliverio's false representations about their trademark rights. (Docket No. 84 at

25–26.) Unlike its purely contract-based claims, Stellar's fraudulent inducement claim against Oliverio is consistent with the general principle that "[a]n agent cannot escape liability for tortious acts, including fraud or misrepresentation, against third persons simply because the agent was acting within the scope of the agency or at the direction of the employer." *Junkans v. Alamo Rentals, Inc.*, No. M2010-02628-COA-R3-CV, 2011 WL 5145763, at *4 (Tenn. Ct. App. Oct. 28, 2011) (quoting *Allied Sound, Inc. v. Neely*, 909 S.W.2d 815, 821 (Tenn. Ct. App. 1995)).

Because Count V alleges fraudulent inducement, Stellar must "state with particularity the circumstances constituting fraud," as required by Rule 9(b) of the Federal Rules of Civil Procedure. *See Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 751 (6th Cir. 2014) (holding that fraudulent inducement claim is subject to Rule 9(b)). The Sixth Circuit has explained the purpose of Rule 9(b) as follows:

> [Rule 9(b)] should not be read to defeat the general policy of "simplicity and flexibility" in pleadings contemplated by the Federal Rules. Rather, Rule 9(b) exists predominantly for the same purpose as Rule 8: "to provide a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading." Rule 9(b), however, also reflects the rulemakers' additional understanding that, in cases involving fraud and mistake, a "more specific form of notice" is necessary to permit a defendant to draft a responsive pleading.

*U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 503 (6th Cir. 2008) (citations omitted). "So long as a [plaintiff] pleads sufficient detail – in terms of time, place and content, the nature of a defendant's fraudulent scheme, and the injury resulting from the fraud – to allow the defendant to prepare a responsive pleading, the requirements of Rule 9(b) will generally be met." *Id.*

"To sustain a claim of fraud in the inducement of a contract, a plaintiff must prove five elements: '(1) [the existence of] a false statement concerning a fact material to the transaction; (2) knowledge of the statement's falsity or utter disregard for its truth; (3) intent to induce

reliance on the statement; (4) reliance under circumstances manifesting a reasonable right to rely on the statement; (5) an injury resulting from the reliance.'" *Blackburn & McCune, PLLC v. Pre-Paid Legal Servs., Inc.*, 398 S.W.3d 630, 644 (Tenn. Ct. App. 2010) (quoing *Lamb v. MegaFlight*, 26 S.W.3d 627, 630 (Tenn. Ct. App. 2000)).

The most recent version of Stellar's complaint does allege that Stellar relied on statements by Oliverio in entering the contract:

> Third Party Plaintiffs were contacted by Anthony J. Oliverio seeking their services for Servpro of Gilbert's website and search engine optimization services. Based upon the representations of Anthony J. Oliverio that he was authorized to use the Servpro trademarks in his marketing of his Servpro franchise, Stellar entered into a Contract with Third-Party Defendants to provide services . . . .

(Docket No. 84 at 17.) Stellar, though, does not plead the context, time, or medium of Oliverio's allegedly false representations, other than that they occurred during the course of discussions about Stellar doing business with Olive Mill. The description of the content of Oliverio's representations is also lacking: the general claim that Oliverio was "authorized to use the Servpro trademarks in his marketing of his Servpro franchise" does not preclude the possibility that that authorization included limitations that would interfere with Stellar's planned services. Without more detail regarding how Oliverio represented his and/or Olive Mill's rights, it is impossible to know whether Stellar relied on them and if that reliance was reasonable.

Stellar also fails to provide a clear account of how its decision to enter into the contract was made in reliance on Oliverio's statements, given the content of the final contract between it and Olive Mill. The contract between Olive Mill and Stellar includes fresh, written, formal representations of Olive Mill's rights related to the underlying trademarks and incorporates indemnification and guarantee provisions protecting Stellar in the event Olive Mill's representations proved to be incorrect. It is difficult to see how Stellar could have been acting in

11

reliance on Oliverio's earlier representations regarding his and Olive Mill's rights, given that the ultimate underlying contract expressly provides for the possibility that those representations had been mistaken and identifies appropriate remedies. Because Stellar has not pled fraud in the inducement with particularity, Count V will also be dismissed as it pertains to Oliverio.

## II. Motion to Stay or Dismiss Pending Arbitration

Olive Mill argues that the dispute resolution clause of its contract with Stellar requires that Stellar's claims be considered in the first instance by an arbitrator, and that the court should therefore either dismiss the claims or stay its consideration of them and compel arbitration.[5] Stellar responds that Olive Mill has waived its right to invoke the arbitration provision by taking actions inconsistent with arbitration, in particular by participating in this litigation.

### A. Legal Standard

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, where a litigant establishes the existence of a valid agreement to arbitrate the dispute at issue, the district court must grant the litigant's motion to compel arbitration and stay or dismiss proceedings until the completion of arbitration. *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005) (citing 9 U.S.C. §§ 3–4). There is a strong presumption in favor of arbitration under the FAA, *O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 355 (6th Cir. 2003), as a result of which any doubts regarding arbitrability must be resolved in favor of arbitration. *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003). If the existence of a valid and applicable arbitration agreement is not "in issue" – that is, the existence of a valid and applicable arbitration clause is clear and not subject to reasonable dispute – the court must allow for arbitration of the matter. *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002).

---

[5] Like Oliverio, Olive Mill advances the same argument in both pending motions to dismiss, and its motion of August 29, 2016, will be dismissed as moot.

Nevertheless, "it has long been settled that a party can waive its contractual right to arbitration." *Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d 713, 717 (6th Cir. 2012) (citing *Am. Locomotive Co. v. Gyro Process Co.*, 185 F.2d 316, 318 (6th Cir. 1950)). "[A] party may waive an agreement to arbitrate by engaging in two courses of conduct: (1) taking actions that are completely inconsistent with any reliance on an arbitration agreement; and (2) 'delaying its assertion to such an extent that the opposing party incurs actual prejudice.'" *Hurley v. Deutsche Bank Trust Co. Ams.*, 610 F.3d 334, 338 (6th Cir. 2010) (quoting *O.J. Distrib.*, 340 F.3d at 356). "Both inconsistency and actual prejudice are required" to find a waiver of a right to arbitration. *Shy v. Navistar Int'l Corp*, 781 F.3d 820, 828 (6th Cir. 2015). In light of the FAA's strong presumption in favor of arbitration, a waiver "is not to be lightly inferred." *Johnson Assocs..*, 680 F.3d at 717 (citing *Glazer*, 394 F.3d at 450).

### B. Waiver

Stellar's attempt to enforce its indemnification rights under the contract falls well within the scope of the dispute resolution provision. *See NCR Corp. v. Korala Assocs., Ltd.,* 512 F.3d 807, 814 (6th Cir. 2008) (holding that the "touchstone" for whether a claim is outside an arbitration clause is whether it can be decided "without reference to the agreement containing the arbitration clause"). Stellar, though, contends that, even if its claims had at one time been subject to that provision, Olive Mill has since waived those rights. Stellar likens this case to *Johnson Associates Corporation v. HL Operating Corp*, in which the Sixth Circuit held that a defendant that asserted its arbitration rights well into the litigation process had waived those rights due to its delay and the resulting litigation expenses incurred by the other parties. 680 F.3d at 721.

Olive Mill, though, asserted its arbitration rights in its initial responsive motion to

Stellar's first Third-Party Complaint in April 2016. (Docket No. 31 at 1–2.) The only delay between Stellar's filing of its claims against Olive Mill and Olive Mill's assertion of its rights was a twenty-day extension to which Stellar agreed. Any delay in the resolution of Olive Mill's attempt to arbitrate since then has been the result of Stellar's numerous amendments of its complaint, not any action by Olive Mill. Stellar makes much of the fact that Olive Mill has, like the defendant in *Johnson Associates*, filed motions, participated in a settlement conference, and participated in discovery in this case. The defendant in *Johnson Associates*, though, took all of those steps *before* asserting its arbitration rights. 680 F.3d at 716. Olive Mill moved to enforce its arbitration rights from the start of its involvement in these proceedings and has reasserted those rights consistently and repeatedly throughout. A party with a pending arbitration motion can hardly be expected to boycott the ordinary advancement of litigation while it awaits a ruling.

The only delay on which Stellar can rely, then, is Olive Mill's alleged delay in asserting its arbitration rights before Stellar filed its third-party indemnification claim. Stellar suggests that Olive Mill should have initiated arbitration proceedings against Stellar as early as October 2015, when Oliverio and Brasfield engaged in the e-mail exchange that Stellar suggests led to Servpro's filing this action. Even if one assumes that the e-mail exchange put Olive Mill on notice of a potential dispute under its contract with Stellar, though, declining to immediately initiate arbitration is insufficient to support a finding of waiver. Stellar has identified nothing in the FAA suggesting that a party loses its arbitration rights merely by failing to exercise them at the earliest possible opportunity. For example, the Sixth Circuit has "repeatedly determined that there was no waiver when a party refused to arbitrate, prior to the commencement of litigation, on the grounds that its opponent's claims were substantively weak." *Shy*, 781 F.3d at 829 (citing *JPD Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 394 (6th Cir. 2008); *Highlands Wellmont*

*Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 574 (6th Cir. 2003)).

At the time of the e-mail exchange, Olive Mill had no way of knowing with any certainty how serious or contentious the dispute between Servpro and Stellar would become, or, by extension, whether its indemnification obligation would ever be invoked. By Stellar's own account, it did not even inform Olive Mill of this litigation until February 10, 2016 – immediately before filing its Third-Party Complaint. (Docket No. 96 at 5.) Olive Mill's failure to rush to arbitration as soon as the bare potential for a dispute became apparent was in no way inconsistent with its later reliance on the arbitration provision. Nor was that pre-litigation delay responsible for the litigation costs that Stellar has incurred since. Neither Olive Mill's pre-litigation or litigation actions, therefore, justify a finding of waiver.

### D. Dismissal versus Staying Proceedings

This court has construed the FAA as permitting either dismissal or a stay of consideration of claims pending arbitration. *See Dean v. Draughons Jr. Coll., Inc.*, 917 F. Supp. 2d 751, 764 (M.D. Tenn. 2013); *Tenn. Imps., Inc. v. Filippi*, 745 F. Supp. 1314, 1323 (M.D. Tenn. 1990). Each option has advantages. For example, outright dismissal allows the court to "prevent unpursued claims from languishing unnecessarily and indefinitely on the court's docket," whereas a stay may, where necessary, permit a court to grant such "preliminary injunctive relief necessary to ensure that the arbitration process remains a meaningful one." *Filippi*, 745 F. Supp. at 1324.

Although Stellar has raised a number of causes of action, the gravamen of its claims is its right to indemnification in the ongoing proceedings between Servpro and Stellar. A referral to arbitration therefore does not change the fact that Stellar's substantive rights are closely entwined with the eventual outcome of this case. For that reason, the court will stay, rather than

dismiss, the claims against Olive Mill pending further developments in the underlying litigation.

## CONCLUSION

For the foregoing reasons, Olive Mill's Motion to Dismiss or In the Alternative to Compel Arbitration and Motion to Stay (Docket No. 76) and Oliverio's Motion to Dismiss for Failure to State a Claim (Docket No. 74) will be denied as moot. Olive Mill's Third Motion to Dismiss or In the Alternative to Compel Arbitration and Motion to Stay (Docket No. 92) will be granted; the court's consideration of all claims against Olive Mill will be stayed and the claims referred to arbitration. Oliverio's Third Motion to Dismiss for Failure to State a Claim (Docket No. 90) will be granted and all claims against him dismissed.

An appropriate order will issue.

_____
ALETA A. TRAUGER
United States District Judge